IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WPD MANAGEMENT, LLC; 1215 W. 81ST, )<br>LLC, and ERICA BROWN, as Administrator of )<br>the Estate of FRANK O. BARNES, deceased, )<br>)<br>Defendants. )<br>) | Case No. 1:23-cv-17133<br><br>The Honorable Charles P. Kocoras |

**FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

Now comes Plaintiff, Nautilus Insurance Company ("Nautilus"), by and through its attorneys, Dana A. Rice and Adam P. Joffe of Traub Lieberman Straus & Shrewsberry, LLP, and for its First Amended Complaint for Declaratory Judgment against Defendants, WPD Management, LLC ("WPD Management"); 1215 W. 81st LLC ("1215 W. 81st"); and Erica Brown, as administrator of the Estate of Frank O. Barnes ("Brown") (collectively, the "Defendants"), it states as follows:

**THE PARTIES**

1. Nautilus is, and at all relevant times has been, a corporation organized under the laws of Arizona with its principal place of business in Scottsdale, Arizona. At all times relevant hereto, Nautilus was a surplus lines insurer whose policies may be sold in Illinois.

2. At all times relevant hereto, WPD Management was a limited liability company organized under the laws of Illinois with its principal place of business in Chicago, Illinois. WPD Management is comprised of only one member:

1

      a.      Lakeshore Advisors LLC, is itself a limited liability company organized under the laws of Illinois, with its principal place of business in Chicago, Illinois. Lakeshore Advisors LLC is comprised of only one member:

          (1)      Welker General Partnership, a general partnership organized under the laws of Illinois, with its principal place of business in Chicago, Illinois, and comprised of Kevin Nugent, who, at all times relevant hereto, was a citizen of Illinois.

3.      At all times relevant hereto, 1215 W. 81st was a limited liability company organized under the laws of Illinois with its principal place of business in Chicago, Illinois. 1215 W. 81st is comprised of only one member:

      a.      Lakeshore Advisors LLC, is itself a limited liability company organized under the laws of Illinois, with its principal place of business in Chicago, Illinois. Lakeshore Advisors LLC is comprised of only one member:

          (1)      Welker General Partnership, a general partnership organized under the laws of Illinois, with its principal place of business in Chicago, Illinois, and comprised of Kevin Nugent, who, at all times relevant hereto, was a citizen of Illinois.

4.      At all times relevant hereto, Brown was a citizen of Illinois.

## **JURISDICTION**

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) in that the citizenship of the parties is diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Specifically, the case relates to an insurance policy that provides well in excess of $75,000 in coverage for covered claims, and the underlying lawsuit,

which gives rise to this insurance coverage action, seeks damages for the wrongful death of Frank O. Barnes ("Barnes").

## VENUE

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to this litigation occurred in this judicial district, and because at least one of the defendants is a resident of this judicial district and all defendants are residents of the State of Illinois.

## FACTUAL BACKGROUND

### The Underlying Lawsuit

7. On or about September 5, 2023, Brown, as administrator of the Estate of Barnes, filed a Complaint at Law against WPD Management and 1215 W. 81st in the Circuit Court of Cook County, Illinois, under Case Number 2023 L 008902 ("*Barnes* Lawsuit").

8. On or about March 27, 2024, Brown, as administrator of the Estate of Barnes filed an Amended Complaint at Law in the *Barnes* Lawsuit. (A true and correct copy of the Amended Complaint at Law in the *Barnes* Lawsuit is attached hereto as **Exhibit A** and incorporated herein by reference.)

9. The *Barnes* Lawsuit arises out of fatal injuries that Barnes allegedly sustained when he fell three stories from a property located at 1215 W. 81st Street, Chicago, Illinois ("Property").

10. Barnes was allegedly performing roof work on a construction project at the Property at the time of the incident. (Ex. A, ¶¶ 12-13.)

11. The *Barnes* Lawsuit alleges that 1215 W. 81st St. entered into an oral contract with Clear Construction LLC for Clear Construction LLC to serve as the general contractor for the rehabilitation of the Property. (Ex. A, ¶ 4.)

12. The *Barnes* Lawsuit alleges that Clear Construction LLC contracted with, hired, employed, and/or retained Moses King Jr. d/b/a Moses King LLC ("Moses King") to perform roofing work on the Project. (Ex. A, ¶ 10.)

13. The *Barnes* Lawsuit alleges that Barnes was employed by Moses King to serve as a roofer/laborer on the Project. (Ex. A, ¶ 11.)

14. Count I of the *Barnes* Lawsuit asserts a claim for "Negligence/Wrongful Death" against non-party Clear Construction LLC. (Ex. A, ¶¶ 1-27.)

15. Count II of the *Barnes* Lawsuit asserts a claim for "Survival Action" against non-party Clear Construction LLC. (Ex. A, ¶ 23.)

16. Count III of the *Barnes* Lawsuit asserts a claim for "Negligence/Wrongful Death" against 1215 W. 81st LLC. (Ex. A, ¶¶ 16-24.)

17. Specifically, Count III alleges that 1215 W. 81st was the owner of the Property. (Ex. A, ¶ 16.)

18. Count III alleges that, as owner of the Property, 1215 W. 81st owed a duty to ensure that all work being done at the Property was performed in a safe and proper manner so that workers legally on the Property would not be injured. (Ex. A, ¶ 17.)

19. Count III further alleges that 1215 W. 81st breached its duties and acted negligently by: (1) failing to provide any type of fall protection; (2) failing to furnish a safe, secure, suitable, and/or proper work area; (3) failing to inspect, oversee, direct, supervise, and/or manage the methods of how work being performed on the roof on the Property was being done; (4) failing to warn Barnes of the existence of no fall protection; (5) failing to require any subcontractor or contractor to provide fall protection; (6) negligently hiring, retaining, picking, and/or selecting property managers, contractors, or subcontractors who did not adequately follow safety rules; (7)

failing to provide a warning line system so workers on the roof would know they were approaching the edge of the roof; (8) failing to provide any type of guard rail; (9) failing to provide any type of safety net; (10) failing to provide any type of fall arrest system; (11) failing to erect any fall protection netting; (12) failing to make a reasonable safety inspection of the Property; and (13) failing to ensure safe, suitable, and proper working conditions of the roof. (Ex. A, ¶¶ 19.)

20. Count IV of the *Barnes* Lawsuit asserts a survival action against 1215 W. 81st. (Ex. A, ¶ 23.)

21. Specifically, Count IV alleges that, as a direct and proximate result of the above-referenced negligent acts, Barnes was caused to sustain significant pain and suffering prior to his death. (Ex. A, ¶ 23.)

22. Count V of the *Barnes* Lawsuit asserts a claim for "Negligence/Wrongful Death" against WPD Management. (Ex. A, ¶¶ 16-33.)

23. The *Barnes* Lawsuit alleges that "on or about January 11, 2023, and for a long time prior thereto, defendant WPD advertised themselves as property managers." (Ex. A, ¶ 19.)

24. The *Barnes* Lawsuit further alleges that "WPD managed, controlled and/or operated" the Property. (Ex. A, ¶ 21.)

25. Count V further alleges that on January 11, 2023, "WPD, by and through their employees, contractor's [*sic*], subcontractors, servants and/or agents, was engaged in" contracting for and overseeing the rehabilitation work at the Property. (Ex. A, ¶¶ 22.)

26. Count V alleges that WPD Management retained, hired, and/or selected contractors and other workers to work on the Property. (Ex. A, ¶ 23.)

5

27. Per the *Barnes* Lawsuit, "[a]t all relevant times WPD had the right and authority to plan, schedule, check, inspect, stop, direct and make changes to the means and/or methods of the rehabilitation work in progress" at the Property. (Ex. A, ¶ 24.)

28. Count V alleges that WPD Management was also allegedly responsible for ensuring that all work done on the Property was done in a safe manner and complied with all applicable fall protection requirements. (Ex. A, ¶ 25.)

29. Count V alleges that WPD Management breached its duties to provide safety railings, and/or banisters, safety netting, or personal fall arrest systems for workers on the Property who were required to work on the roof. (Ex. A, ¶¶ 26-28.)

30. Count V also alleges that WPD Management breached its duties to ensure that the subcontractors they had selected, hired, and/or retained performed their work in compliance with all applicable fall safety rules, standards, policies, procedures and/or regulations, and to ensure that work was done in a safe and proper fashion in order to prevent injuries to workers on the Property, including on the roof. (Ex. A, ¶ 28.)

31. Finally, Count V alleges that WPD Management breached its duties to exercise ordinary care in the inspection, management, direction, planning, operation, and/or control of the methods of work being done on the Property to prevent injury to Barnes and others. (Ex. A, ¶ 28.)

32. Count VI of the *Barnes* Lawsuit asserts a survival action against WPD Management. (Ex. A, ¶ 29.)

33. Specifically, Count VI alleges that, as a direct and proximate result of the above-referenced negligent acts, Barnes was caused to sustain significant pain and suffering prior to his death. (Ex. A, ¶ 29.)

6

**Property Management Agreement Between WPD Management and 1215 W. 81st St.**

34. On or about September 7, 2022, WPD Management and 1215 W. 81st St. entered into a property management agreement ("PMA") where WPD Management agreed to serve as the property manager of the Property. (A true and correct copy of the PMA is attached hereto as **Exhibit B** and incorporated herein by reference.)

35. The signatories to the PMA were WPD Management (as property management company) and 1215 W. 81st St. (as owner of the Property). (Ex. B.)

36. As explained below, the named insureds on the insurance policy issued by Nautilus were not signatories to the PMA.

## THE NAUTILUS POLICY

37. Nautilus issued a commercial general liability insurance policy to "Woodlawn Properties, LLC; 1136 W 68th, LLC; 755-765 E 96th Place c/o WPD Management" under policy number NN1381801 for the policy period of March 21, 2022 to March 21, 2023. The Nautilus Policy provides, among other things, commercial general liability coverage subject to a liability limit of $1,000,000 per occurrence and a general aggregate limit of $2,000,000. (A true and correct copy of the Nautilus Policy is attached hereto as **Exhibit C** and incorporated herein by reference.)

## COUNT I

### WPD MANAGEMENT AND 1215 W. 81ST ST. ARE NOT INSUREDS UNDER THE TERMS OF THE NAUTILUS POLICY

38. Nautilus adopts and realleges the allegations in paragraphs 1 through 37 of its First Amended Complaint for Declaratory Judgment as paragraph 38 of Count I of its First Amended Complaint for Declaratory Judgment as if fully set forth herein.

39. The Nautilus Policy provides, in relevant part, the following with respect to who qualifies as an insured:

**SECTION II – WHO IS AN INSURED**

    **1.**    If you are designated in the Declarations as:

* * *

        **c.**  A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

* * *

    **2.**    Each of the following is also an insured:

        **b.**  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

* * *

(Ex. C.)

40. By its plain terms, the Nautilus Policy provides that a limited liability company ("LLC") designated in the Nautilus Policy's Declarations is an insured. (Ex. C.)

41. Here, the entities designated in the Nautilus Policy's Declarations are Woodlawn Properties, LLC; 1136 W 68th, LLC; and 755-765 E 96th Place, none of which are named defendants in the underlying *Barnes* Lawsuit. (Ex. C.)

42. WPD Management and 1215 W. 81st St. are not named insureds on the Nautilus Policy. (Ex. C.)

43. The Nautilus Policy further provides that any person or organization, other than an employee or volunteer worker, while acting as a real estate manager for the named insureds also qualifies as an insured. (Ex. C.)

44. Here, as it relates to the claims asserted in the *Barnes* Lawsuit, neither WPD Management nor 1215 W. 81st St. were alleged to have been real estate managers for any of the three named insureds on the Nautilus Policy. (Exs. A, C.)

45. Accordingly, WPD Management and 1215 W. 81st St. are not insureds on the Nautilus Policy.

46. Nautilus has and had no duty under the Nautilus Policy to defend WPD Management and/or 1215 W. 81st St. against the *Barnes* Lawsuit, or to indemnify them for any judgment or settlement entered in the *Barnes* Lawsuit.

47. An actual controversy exists between Nautilus, WPD Management, 1215 W. 81st St., and Brown, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

    b. Find and declare that WPD Management and 1215 W. 81st St. are not insureds under the terms of the Nautilus Policy;

    c. Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend WPD Management or 1215 W. 81st St. against the *Barnes* Lawsuit, or to indemnify WPD Management and 1215 W. 81st St. for any judgment or settlement entered therein; and

    d. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

### PLEADING IN THE ALTERNATIVE, THE "INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND OTHER WORKERS" EXCLUSION BARS COVERAGE FOR THE *BARNES* LAWSUIT

48. Nautilus adopts and realleges the allegations in paragraphs 1 through 47 of its First Amended Complaint for Declaratory Judgment as paragraph 48 of Count II of its First Amended Complaint for Declaratory Judgment as if fully set forth herein.

49. Coverage A of the Nautilus Policy provides, in relevant part, the following with respect to the liability coverage afforded therein:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period …

                                            * * *

(*See* Ex. C.)

50. The Nautilus Policy also includes Form L205 (11/10), which provides the following:

**EXCLUSION – INJURY TO EMPLOYEES, CONTRACTORS, VOLUNTEERS AND WORKERS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **e. Employer's Liability** under Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is **replaced** by the following:

This insurance does not apply to:

**e.** **Injury to Employees, Contractors, Volunteers and Other Workers**

"Bodily injury" to:

**(1)** "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors of any insured; or

**(2)** Any insured's contractors', subcontractors', or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors, or independent contractors

arising out of and in the course of:

**(a)** Employment by any insured; or

**(b)** Directly or indirectly performing duties related to the conduct of any insured's business; or

**(3)** The spouse, child, parent, brother or sister of that "employee", "leased worker", "temporary worker", "volunteer worker", statutory "employee", casual worker, seasonal worker, contractor, subcontractors,

11

or independent contractor arising out of Paragraph **(1)** or **(2)** above.

This exclusion applies:

**(1)** Regardless of where the:

**(a)** Services are performed; or

**(b)** "Bodily injury" occurs; and

**(2)** Whether any insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or replay someone else who must pay damages because of the injury.

**B**. Exclusion **a. Any Insured** of **2., Exclusions** of **Section I – Coverage C – Medical Payments** is **replaced** by the following:

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured.

(hereinafter referred to as the "Injury to Workers Exclusion.") (*See* Ex. C.)

51. The Nautilus Policy defines the terms "bodily injury", "employee," "leased worker", "occurrence", "temporary worker", and "volunteer worker" as follows:

**SECTION V – DEFINITIONS**

\* \* \*

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\* \* \*

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a temporary worker.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

12

* * *

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave to meet seasonal or short-term workload conditions.

* * *

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

(*See* Ex. C.)

52. Here, the *Barnes* Lawsuit alleges that WPD Management, "by and through their employees, contractor's [*sic*], subcontractors, servants and/or agents, was engaged in contracting for and overseeing the rehabilitation work" at the Property. (Ex. A, ¶ 22.)

53. The *Barnes* Lawsuit further alleges that WPD Management "retained, hired and/or selected the contractors and other workers that were doing rehabilitation work on the premises." (Ex. A, ¶ 23.)

54. The *Barnes* Lawsuit alleges that WPD Management "had the right and authority to plan, schedule, check, inspect, stop, direct and make changes to the means and/or methods of the rehabilitation work in progress" at the Property. (Ex. A, ¶ 24.)

55. The *Barnes* Lawsuit further alleges that WPD Management "had a duty to ensure that it's [*sic*] contractors provided all necessary fall protection, including safety railings, and/or banisters, safety netting, personal fall arrest systems and/or a warning line system for workers on the premises…" (Ex. A, ¶ 25.)

56. On information and belief, WPD Management hired Moses King, LLC, and Moses King, LLC, in turn, hired Barnes, to perform work at the Property.

57. If, for the sake of discussion, 1215 W 81st St. and/or WPD Management qualified as insureds on the Nautilus Policy (which Nautilus expressly denies), the Injury to Employees

Exclusion would bar coverage for both 1215 W 81st St. and WPD Management for the claims asserted against them in the *Barnes* Lawsuit.

58. Specifically, as noted above, Paragraph A.e.(1) of the Injury to Workers Exclusion bars coverage for "bodily injury" to "'[e]mployees', 'leased workers', 'temporary workers', 'volunteer workers', statutory 'employees', casual workers, seasonal workers, contractors, subcontractors, or independent contractors of *any* insured." Additionally, Paragraph A.e.(2) of the Injury to Workers Exclusion bars coverage for "bodily injury" to "***any*** insured's contractors', subcontractors', or independent contractors' 'employees', 'leased workers', 'temporary workers', 'volunteer workers', statutory 'employees', casual workers, seasonal workers, contractors, subcontractors, or independent contractors." (Ex. C.)

59. Accordingly, if 1215 W 81st St. and/or WPD Management were insureds under the Nautilus Policy (which Nautilus expressly denies), then Barnes would have been an employee of ***any*** insured's contractor or subcontractor and, thus, the Injury to Workers Exclusion would bar coverage for ***all*** insureds for his alleged injuries. (Ex. C.)

60. To the extent the *Barnes* Lawsuit alleges "bodily injury" resulting from an "occurrence," the Injury to Workers Exclusion bars coverage under the Nautilus Policy for 1215 W 81st St. and WPD Management for the claims asserted in the *Barnes* Lawsuit.

61. Nautilus has and had no duty under the Nautilus Policy to defend 1215 W 81st St. or WPD Management against the *Barnes* Lawsuit, or to indemnify them for any judgment or settlement entered in the *Barnes* Lawsuit.

62. An actual controversy exists between Nautilus, 1215 W 81st St., WPD Management, and Brown, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested

14

with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b. Find and declare that the Nautilus Policy's Injury to Workers Exclusion bars coverage for the damages alleged in the *Barnes* Lawsuit;

c. Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend 1215 W 81st St. and WPD Management against the *Barnes* Lawsuit, or to indemnify 1215 W 81st St. and WPD Management for any judgment or settlement entered therein; and

d. Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

### PLEADING IN THE ALTERNATIVE, THE "CONTRACTORS" EXCLUSION BARS COVERAGE FOR THE *BARNES* LAWSUIT

63. Nautilus adopts and realleges the allegations in paragraphs 1 through 62 of its First Amended Complaint for Declaratory Judgment as paragraph 63 of Count III of its First Amended Complaint for Declaratory Judgment as if fully set forth herein.

64. The Nautilus Policy also includes Form L282 (07/10), which provides the following:

**EXCLUSION – CONTRACTORS AND SUBCONTRACTORS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is **added** to **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability, Coverage B – Personal And Advertising Injury Liability** and **Coverage C – Medical Payments:**

15

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work.

(hereinafter referred to as the "Contractors Exclusion".) (Ex. C.)

65. By its plain terms, the Contractors Exclusion bars coverage where the "bodily injury" to Barnes arose out of work performed by "any contractor or subcontractor" whether that contractor or subcontractor was hired by or on behalf of **any insured** *or* any acts or omissions in connection with the general supervision of such work. (Ex. C.)

66. Here, the *Barnes* Lawsuit alleges that WPD Management, "by and through their employees, contractor's [*sic*], subcontractors, servants and/or agents, was engaged in contracting for and overseeing the rehabilitation work" at the Property. (Ex. A, ¶ 22.)

67. The *Barnes* Lawsuit further alleges that WPD Management "retained, hired and/or selected the contractors and other workers that were doing rehabilitation work on the premises." (Ex. A, ¶ 23.)

68. The *Barnes* Lawsuit alleges that WPD Management "had the right and authority to plan, schedule, check, inspect, stop, direct and make changes to the means and/or methods of the rehabilitation work in progress" at the Property. (Ex. A, ¶ 24.)

69. The *Barnes* Lawsuit further alleges that WPD Management "had a duty to ensure that it's [*sic*] contractors provided all necessary fall protection, including safety railings, and/or banisters, safety netting, personal fall arrest systems and/or a warning line system for workers on the premises…" (Ex. A, ¶ 25.)

70. On information and belief, WPD Management hired Moses King, LLC, and Moses King, LLC, in turn, hired Barnes, to perform work at the Property.

16

71. If, for the sake of discussion, 1215 W 81st St. and/or WPD Management were insureds under the terms of the Nautilus Policy (which Nautilus expressly denies), Barnes' "bodily injury" arose out of work performed by a contractor or subcontractor hired by or on behalf of 1215 W 81st St. or WPD Management, or out of the general supervision of such work.

72. Accordingly, the Contractors Exclusion would bar coverage for the claims asserted in the *Barnes* Lawsuit.

73. To the extent that the *Barnes* Lawsuit alleges "bodily injury" resulting from an "occurrence," the Contractors Exclusion bars coverage under the Nautilus Policy for 1215 W 81st St. and WPD Management for the claims asserted in the *Barnes* Lawsuit.

74. Nautilus has and had no duty under the Nautilus Policy to defend 1215 W 81st St. and WPD Management against the *Barnes* Lawsuit, or to indemnify them for any judgment or settlement entered in the *Barnes* Lawsuit.

75. An actual controversy exists between Nautilus, 1215 W 81st St., WPD Management, and Brown, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Nautilus, respectfully prays that this Honorable Court:

a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Nautilus Policy;

b. Find and declare that the Nautilus Policy's Contractors Exclusion bars coverage for the damages alleged in the *Barnes* Lawsuit;

c. Find and declare that Nautilus has and had no duty under the Nautilus Policy to defend 1215 W 81st St. and WPD Management against the *Barnes* Lawsuit, or to indemnify 1215 W 81st St. and WPD Management for any judgment or settlement entered therein; and

      d.      Grant Nautilus such other and further relief that the Court deems proper under the facts and circumstances.

Respectfully submitted,

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

/s/ Dana A. Rice
Dana A. Rice

Dana A. Rice (6283827)
Adam P. Joffe (6300116)
Traub Lieberman Straus & Shrewsberry LLP
71 South Wacker Drive
Suite 2110
Chicago, IL 60606
Telephone: 312-332-3900
drice@tlsslaw.com
ajoffe@tlsslaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 27, 2024 I electronically filed the above with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ Dana A. Rice
Dana A. Rice