# EXHIBIT B



# PROPERTY MANAGEMENT AGREEMENT

**Manager:** WPD Management, LLC  
PO Box 377950  
Chicago, IL 60637

**Owner:** 1215 W 81st Ave LLC

This Property Management Agreement ("Agreement") is entered into this  14th   day of September, 2022, by and between WPD Management, LLC, hereinafter referred to as "Manager", and 7542 Stewart LLC, hereinafter referred to as "Owner." The relationship of the Owner and Manager (each a "Party") shall be that of principal and agent, and all duties to be performed by Manager under this Agreement shall be on behalf of the Owner, in Owner's name, and for Owner's account. In taking any action under this Agreement, Manager shall be acting only as an agent for Owner, and nothing in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the Parties or as requiring Manager to bear any portion of losses arising from or connected with the ownership or operation of the property located at  1215 W 81st St, Chicago, IL 60620 (the "Property").

Manager shall not at any time during the period of this Agreement be considered an employee of the Owner. Neither Party shall have the power to bind or obligate the other except as expressly set forth in this Agreement.

In consideration of the covenants contained herein and other valuable consideration, the Parties agree that Manager is hereby engaged as the exclusive agent of Owner for the rental, lease, operation, and management of the Property.

    I. **Term.** The term of this Agreement shall be for an initial period of two (2) years beginning on  09/14/2022   and ending on 09/30/2024 (the "Termination Date"); and thereafter shall automatically renew for a term or terms of one (1) year each, and the Termination date extended accordingly, unless and until terminated by either Party in accordance with the provisions of this Agreement. Management start date is contingent on when WPD Management receives keys.

II.     **Duties of Manager.** Owner hereby appoints Manager as its exclusive agent with the following duties:

    A. To advertise the availability for rent of the Property or any part thereof, in media which, in the Manager's sole discretion, are suitable for the Property and market conditions.

    B. To display "FOR RENT" or "FOR LEASE" signs as appropriate and to post a Lock Box on the Property for prospective tenant viewing.

    C. To receive applications and non-refundable fees as expenses require or market conditions determine. Manager shall receive directly and retain such non-refundable application screening fees, late fees, and other such charges.

    D. To screen applicants in accordance with Manager's screening criteria.

    E. To negotiate and execute rental or lease agreements and to negotiate and execute necessary addenda, renewals, and cancellations.

F. To collect rent, screening fees, and late fees where applicable and other charges, and to issue receipts as necessary.

G. To deposit all rent, fees, monies, etc. collected for Owner in a trust account for Owner ("Owner's Trust Account") with a banking institution insured by the FDIC.

H. To terminate tenancies and to sign and serve for the Owner such notices as Manager deems appropriate.

I. To commence legal actions or collections in the name of the Owner to evict tenants and recover possession of the premises and to recover rents and such sums due and to settle, compromise and release such actions, which authority is hereby expressly granted solely to the Manager by the Owner. All expenses of litigation, including costs and attorney fees shall be paid by the Owner. Manager may select a qualified outside provider of its choice to handle such litigation.

J. To reinstate tenancies when appropriate.

K. To determine what expenses shall be paid and disbursements made in the event insufficient funds are available to pay all amounts currently due. In no event shall Manager be required to use its funds to pay any of the obligations of the Owner.

L. To deliver to Owner all required reports.

M. To make inspections of the Property consistent with applicable laws and as deemed necessary and appropriate in the sole discretion of Manager.

N. To make or cause to be made ordinary and reasonable repairs, including obtaining necessary supplies, without the prior written approval of the Owner, in an amount not to exceed $3,000.00 per occurrence unless, in the sole discretion of Manager, additional expenditures are necessary in an emergency to protect and preserve the Property from damage or to maintain services to tenants as required by law or this Agreement.

O. To provide notice to tenants regarding termination of this Agreement within, as applicable: (i) thirty (30) days prior to the Termination Date set forth in Section I above, (ii) thirty (30) days after receipt of a notice of termination by Owner in accordance with Section XIII(A) below, or (iii) thirty (30) days after delivery of a notice of termination by Manager in accordance with Section XIII(B) below.

P. To provide to Owner, within sixty (60) days after termination of this Agreement, all unobligated funds and a final accounting of obligated funds and copies of all necessary agreed upon documents which may be reproduced by Manager in accordance with its schedule of fees and charges.

Q. To comply with all requirements of the law applicable to landlords or to advise Owner so that he/she may act as necessary to comply therewith. It is illegal for Manager, Owner or anyone else to refuse to display or sell to any person because of one's membership in a protected class, e.g. race, color, religion, national origin, sex, ancestry, age, marital status, physical or mental handicap, familial status, sexual orientation, unfavorable discharge from military service, order of protection status or any other class protected by Article 3 of the Illinois Human Rights Act.

R. To maintain, at Owner's sole cost and expense, the Property in good repair in accordance with local codes and any other applicable laws of this state of its subdivisions including, but not limited to, cleaning, painting, decorating, plumbing, carpentry, grounds care, and such other maintenance and repair as may be necessary subject to limitations imposed by Owner in writing in advance. Expenses associated with said maintenance and repair shall be paid out of Owner's Trust Account.

S. To manage the Property in accordance with standards of reasonable care and diligence and to furnish the service of its organization for the management and operation of the Property.

    T. To pay bills delivered to Manager by service providers in connection with the management of the Property. Such funds shall be paid directly from Owner's Trust Account.

    U. Upon termination of this Agreement by either Party, and unless directed otherwise in writing by Owner, Manager shall, in a timely manner, deliver all refundable security deposits to Owner.

    V. To disburse available funds in Owner's Trust Account to Owner by the 15th day of each month, less the following: (a) compensation of Manager required by Section VII; (b) any payments otherwise due Manager for any reason; (c) amounts necessary to maintain a minimum reserve of $500.00 per unit; and (d) any amounts retained at the direction of Owner. Payments by check will not be deemed available funds until they have been verified by the financial institution on which the check is drawn or fourteen (14) days after the check is deposited, whichever comes first.

    W. For an additional amount to be determined in advance by Manager, Manager will commission third-party vendors to perform ongoing services as needed, such as trash collection, common area cleaning, landscaping and snow removal.

**III.**    **Limitations on Manager's Duties and Liabilities.** Manager is not responsible or liable to Owner for the following:

    A. Any damage caused by Owner or its agents or employees, tenants of the Property, or any other party other than Manager and/or any damage caused to the Property outside the control of Manager to the Property and the surrounding areas, including, but not limited to the interior or the exterior of the Property.

    B. Compliance of the Property or any equipment therein with the requirements of any statute, ordinance, law, or regulation of any governmental body or of any public authority or official thereof having jurisdiction, except to notify Owner promptly or forward to Owner promptly any complaints, warnings, notices or summonses received by Manager relating to such matters and to cooperate with Owner to resolve them. Owner represents that to the best of Owner's knowledge the condition of the Property complies with all legal requirements.

    C. Failure to make a payment on a loan, taxes, insurance or assessments.

    D. Any acts or omissions of Owner, any previous owner of the Property or any previous management or other agent of Owner or any previous owner of the Property, or any agents or employees of such parties.

    E. Any failure of, or default by, any tenant of the property in the payment of any rent or other charges due Owner or on the performance of any obligations owed by any tenant of the Property to Owner pursuant to any lease or otherwise.

    F. Previously unknown violations of environmental or other regulations which may become known during the term of this Agreement.

    G. Damages resulting from the failure of any facilities or equipment owned by Owner servicing the Property, except to the extent such damage resulted directly from Manager's gross negligence or willful acts.

**IV.**    **Duties of Owner**. Owner accepts and agrees to perform, the following duties:

    A. To return excess distributions to Manager within ten (10) days of a written request stating the amount to be returned and the basis for the claim there has been an excess distribution.

B. To establish agreed-upon goals to upgrade and maintain the Property, subject to the availability of funds.

C. To allow Manager to maintain the property in good repair with local codes and any other applicable laws of this state or its subdivisions. If Owner's Trust Account has insufficient reserves to fund the repair or replacement of any property or building component that does not meet local building code standard or is a life safety issue of any kind, then to immediately fund the Owner's Trust Account so manager may make and pay for said repair or replacement.

D. To assume a continuing obligation for satisfaction of any valid agreement entered into by the Manager for the benefit of the Owner, even if such obligation extends beyond the period during which the Manager is managing the Property.

E. To pay all expenses incurred by the Manager, including without limitation, attorneys' fees for counsel employed to represent the Manager, the Owner or both in any proceeding, controversy or suit involving the Property or its operation. Nothing herein shall require the Manager to employ counsel to represent the Owner in any such proceeding or suit.

F. To indemnify and hold Manager harmless from any liability arising from an alleged violation of any law affecting the Property.

V. **Disclosures.**

A. Owner represents, warrants or agrees that:

i. Owner is, and shall be throughout the term of this Agreement, the legal owner of the Property or the controlling party of a legal entity which owns the Property, and has full authority to enter into this Agreement and to employ the Manager under the terms of this Agreement.

ii. There are no additional written or oral agreements affecting the management of the Property other than tenant leases, copies of which have been provided to Manager, and Owner shall promptly provide or disclose to Manager all such agreements throughout the term of this Agreement.

iii. To the best of the Owner's knowledge, the Property and the building on the Property do not violate any applicable laws, statutes, ordinances or regulations, including without limitation any applicable building codes, and Owner shall promptly disclose to Manager all such violations, if any, that arise during the term of this Agreement.

iv. To the best of Owner's knowledge, the building is in compliance with all applicable environmental laws and does not contain any hazardous substances, as such are defined in any federal, state or local law, and Owner shall promptly disclose to Manager all such noncompliance, if any, that arises during the term of this Agreement.

v. Owner has disclosed the existence of any default or foreclosure notices affecting the Property as of the date of this Agreement and shall disclose any such notices received hereafter within two (2) days of receipt.

vi. Manager may disclose Owner's identity to any federal, state, or local official.

B. Manager represents, warrants or agrees that:

i. Manager, from time to time, employs property managers, clerical and accounting staff, and other workers as needed. All employee compensation, taxes and other benefits, including payroll and bookkeeping costs, shall be Manager's sole responsibility.

      ii. Manager may outsource maintenance work as Manager deems appropriate in Manger's sole discretion, including without limitation to an independent company formed by Manager.

**VI. Accounting Records and Reports.** Manager shall have the following responsibilities with respect to accounting records and reports:

  A. Financial reports will be prepared and maintained in an agreed-upon form and with such content as is satisfactory to Owner. Manager shall provide Owner with a copy of all such reports.

  B. Manager shall establish and maintain a system of records, books, and accounts in a manner satisfactory to Owner. These shall be available for examination at reasonable hours upon reasonable notice by Owner or Owner's authorized representative.

  C. On or before the 15th day of the month, Manager shall prepare and provide to Owner a monthly report that includes at least the following:

      i. A statement of income and expenses for the preceding month and year-to-date, including (on the income portion of such statement) actual rental income collected and an itemized statement of other income received; and

      ii. An itemized list of all delinquent rents as of the 15th day of such month, a rent roll/cash receipts form for the previous month, including the number of occupied and vacant units and the physical vacancy rate.

  D. Manager shall prepare, sign, and file all forms, reports, and returns required by law in connection with Manager's employment of personnel, unemployment insurance, workers' compensation insurance, disability benefits, social security, and other similar insurance, and all other benefits or taxes now in effect or hereafter imposed.

  E. Unless otherwise agreed, all bookkeeping, data processing services, report preparation and management overhead expenses shall be paid for by Manager, from the Management Fee.

  F. Manager shall promptly furnish such additional information (including monthly occupancy reports, Property's balance sheets, monthly budgeted and actual income and expense reports, and tenant eligibility reports) as may be requested from time to time by the Owner with respect to the leasing, financial, physical, or operational condition of the Property.

  G. Manager shall establish Tenant files containing copies of Leases, certification forms, notices, and other documentation required by Owner.

**VII. Compensation.** The Manager shall be compensated for its services according to the following schedule:

  A. *Management Fee.* Manager shall earn a management fee in the amount of SIX percent (6%) of the monthly gross receipts from the operations of the Property, which Manager may pay itself from the Owner's Trust Account on a monthly basis.

  B. *Leasing Fees.* In addition to the Management Fee, the Manager shall earn leasing fees as follows: for the procurement of a tenant for whom a one-year lease is signed, Manager shall be paid a leasing fee equal to one hundred percent (100%) of the first month of rent for the procured tenant. For the procurement of a tenant for whom a two-year lease is signed, Manager shall be paid a leasing fee equal to one hundred twenty-five percent (125%) of the first month of rent for the procured tenant. Manager may outsource leasing services in its sole discretion.

  C. *Lease Renewals.* For Lease renewals, Manager shall be paid a leasing fee equal to twenty-five percent (25%)

of the first month of rent of the renewing tenant following the effective date of such renewal.

D. *Sale*. If Owner terminates this Agreement prior to the Termination Date because of Owner's sale of the Property, Manager shall be entitled to a early termination fee equal to the lesser of (i) the management fee that would accrue over the remainder of the stated term of this Agreement, or (ii) the management fee that would accrue over the next six (6) month period. The accrued management fee shall be calculated based on the monthly fees charged for the last full calendar month prior to service of the notice of cancellation. Such fees owed to Manager shall be immediately due and payable.

E. *Additional Advertising.* Any advertising requested by Owner will be at Owner's expense.

F. *Technology Fee*. Owner shall reimburse Manager in an amount equal to $1.00 per unit per month for back office software services used to track property's performance metrics (vacancy, income/expenses, work orders) and to create Owner's financial reporting.

G. All fees specified herein are payable when earned unless specified otherwise.

VIII. **Fund Transfers for Other Properties.** If Owner and Manager have entered into one or more other agreements under which Manager is managing property for Owner, Manager is authorized to transfer funds from the ledger of one such property to the ledger of another such property for the purpose of prompt payment of any indebtedness authorized by this or any other similar management agreements between the Parties.

IX. **Hold Harmless.** The Parties shall hold each other harmless and reimburse each other for damages under the following circumstances:

A. *Indemnity*. Manager shall indemnify, defend and save Owner harmless from all liability, claims and suits arising because of the gross negligence or intentional torts committed by Manager or its employees. Owner shall indemnify, defend and save Manager harmless from all liability, claims and suits arising out of (i) Manager's lawful discharge of Manager's responsibilities under this Agreement, other than those arising because of the gross negligence or any intentional torts of Manager or its employees; and (ii) Owner's gross negligence or intentional torts committed by Owner

B. *Late Payments*. Owner shall promptly reimburse Manager for any fees or other damages arising from late payments to third parties caused by Owner's failure to maintain a sufficient balance in Owner's operating account after Manager gives Owner reasonable notice of a deficiency, and all such reimbursements shall be accompanied by an administrative fee equal to ten percent (10%) of all such amounts expended by Manager for each month such amounts are unreimbursed by Owner.

C. *Other Damages*. Owner shall indemnify and hold Manager, its employees and agents harmless from all damages and attorneys' fees Manager may be required to pay on account of (1) any damage to or destruction of any property by third parties or (2) injury to or death of any person attributable to third parties.

X. **Warranties.** Manager agrees to use commercially reasonable efforts to perform the services requested of it by Owner in accordance with this Agreement, but makes no warranties of any kind, express or implied, with respect to the services to be provided hereunder. In no event shall Manager be liable to Owner for consequential damages of any kind, including lost profits, regardless of whether Manager was made aware of the potential for lost profits.

XI. **Insurance**.

A. Owner shall carry the following insurance coverage throughout the term of this Agreement:

      i. Owner shall keep the Property insured against damage by fire and other hazards covered by standard extended coverage, all-risk insurance for the full insurable value thereof (without deduction for depreciation or co-insurance), and shall maintain such other initial casualty insurance as reasonably determined by Owner.

      ii. If the Property is located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968 (and any successor act thereto) in an amount at least equal to the maximum limit of coverage available under said act.

      iii. Owner shall maintain use and occupancy insurance covering, as applicable, rental income or business interruption, with coverage in an amount not less than the anticipated operating revenues attributable to the Property for a period of twelve (12) months.

      iv. Owner shall maintain commercial general liability insurance with respect to the Property providing for limits of liability of not less than $1,000,000 per occurrence for both injury to or death of a person and for property damage, together with such other liability insurance as determined by Owner. The Comprehensive General Liability Insurance Policy shall also include blanket contractual liability insurance protection, and the policy must not contain any exclusions other than the exclusions applicable under the Insurance Office Standard CSL form of coverage. Such policies of insurance shall be carried by an insurance company or companies to be mutually agreed upon by the owner and agent and in all events shall be in a company or companies whose ratings, according to the latest A.M. Best & Company Insurance Guide is no less than A.

B. All insurance policies required pursuant to subsection A above shall be endorsed to include Manager as an additional named insured and shall be primary insurance and not excess over or contributory with any other valid, existing and applicable insurance carried by Owner. Certificates of all insurance required hereunder shall be provided by Owner to Manager and shall provide for no less than ten (10) days' prior notice of termination of such policy to be given to Manager and sent to the Manager's address stated herein.

C. If requested by Owner, Manager may procure the insurance coverage required by this Section for the benefit of, and at the expense of Owner; provided, however, any such request nor the procurement of said insurance shall relieve Owner of its obligation to maintain the insurance required under this Section. In the event that Manager procures any such insurance at the request of Owner, Owner shall have no claim against Manager with respect to such insurance, including, without limitation, claims based upon the company or companies selected, the amount of coverage, the limits of liability or the adequacy of coverage.

D. In the event agent receives notification that any insurance required under this Section hereof will lapse, Manager may, but shall not be obligated to, procure similar insurance for the benefit of, and at the expense of Owner. In the event that Manager elects to procure any such insurance, Owner shall have no claim against Manager with respect to such insurance, including, without limitation, claims based upon the company or companies selected, the amount of coverage, the limits of liability or the adequacy of coverage.

E. Owner and Manager shall cooperate with each other and with any insurer in the making and delivery of all reports, notices and other items required in connection with any of the insurance policies.

XII. **Restrictive Covenants.**

    A. *Confidential Information.* "Confidential Information" shall mean information in any format, whether written or oral, received or observed by the Owner or its employee, consultant, agent, member, manager, shareholder, director, officer, independent contractor, advisor (collectively, the "Representatives") that relates to the Manager and is not generally available to the public, or which would reasonably be considered

confidential and/or propriety or which is marked "Confidential" or "Proprietary" but the disclosing Party. Without limiting the generality of the foregoing, Confidential Information includes: (i) the books and records of the Manager, including financial and corporate information of the Manager, (ii) information relating to financial or other economic information, management procedures and/or styles, accounting, marketing, and selling and customer or employee data or statistics, (iii) all analyses, compilations, forecasts, studies, or other documents prepared in connection with the Manager, (iv) information relating to research, development, information systems, pricing, customer lists, personnel relations, merchandising, tenant data and statistics, and commission or fee structure data. Confidential Information shall exclude information that is (y) independently developed by the Owner without reference to the Confidential Information, or (z) has become generally available to the public without breach of any confidentiality obligations.

B. *Non-Disclosure Obligations.*

  i. Owner and its Representatives shall maintain and protect the Confidential Information of Manager with the same degree of care as is normally used in the protection of its own confidential and proprietary information, but in no event with less than a reasonable standard of care. Owner and its Representatives agree not to use received Confidential Information for any purpose, except for the purpose of carrying out its obligations under this Agreement.

  ii. Without the prior consent of Manager, neither Owner nor its Representatives will disclose to any unauthorized third party: (i) any Confidential Information, or (ii) the fact that the Owner and/or its Representatives has requested or received Confidential Information from Manager; provided, however, this Section XII(B)(ii) shall not apply where Owner is required by law, regulation, self-regulatory organization requirement of legal process to disclose any such Confidential Information, so long as Owner limits the disclosure to the extent necessary and gives Manager advance notice of such disclosure, to the extent legally permissible, so that Manager can contest the disclosure or seek a protective order.

  iii. Owner shall limit access to the Confidential Information to those Representatives who: (a) qualify under the definition of Representatives as set forth herein, (b) have been informed of the confidential nature of such information, and (c) have agreed to act in accordance with the terms of this Agreement.

  iv. If requested by Manager in writing, Owner and/or its Representatives will promptly (a) deliver to Manager all documents and other materials comprising Confidential Information, in the possession or under its control, together with all copies and summaries thereof, or (b) destroy all documents and other materials constituting Confidential Information in Owner's possession. Owner and its Representatives agree that, if requested by Manager in writing, an authorized officer will certify to Manager in writing that all such information and materials have been delivered or destroyed in accordance with the terms of this Agreement.

C. *Non-Solicitation.* Neither Owner nor its Representatives, without the prior written consent of Manager, which consent may be withheld in the Manager's sole and absolute discretion, shall from the date hereof and for a period of two (2) years following the termination of this Agreement, regardless of the cause of termination, directly or indirectly solicit for employment any employee, independent contractor, representative, agent or otherwise of Manager. Further, neither Owner nor its Representatives, without the prior written consent of Manager, shall from the date hereof and for a period of two (2) years following the termination of this Agreement, directly or indirectly solicit any former, current, or prospective customer of Manager.

D. *Non-Disparagement*. Owner agrees that, at all times during the term of this Agreement and after the termination of this Agreement, for any reason, Owner shall not engage in any vilification of the Manager and/or any subsidiary or affiliate of the Manager and its and their directors, officers, shareholders, members, managers, employees and agents, and shall refrain from making any false, negative, critical, or disparaging statements, implied or expressed, concerning the Manager and any subsidiary or affiliate of the Manager and

its and their directors, officers, managers, members, employees and agents, including, but not limited to, management style, methods of doing business, the quality of and services, role in the community, or treatment of employees. Owner further agrees to do nothing that would damage the Manager's and affiliates' business reputations or goodwill.

E. *Remedies for Breach of Restrictive Covenants.* Owner acknowledges and agrees that the restrictions contained in this Agreement will not cause any undue hardship to Owner and are reasonable and necessary in order to protect Manager's legitimate interests. Owner further acknowledges and agrees that Owner's violation or threatened violation of any of these restrictions would result in irreparable injury to Manager, and therefore in the event of such actual or threatened violation, Manager shall be authorized and entitled to obtain from any court of competent jurisdiction temporary, preliminary and permanent injunctive relief, without bond, as well as other equitable relief, which remedies shall be cumulative and in addition to any other remedies to which Manager may be entitled, and such other non-equitable relief, including damages directly or indirectly sustained by Manager as a result of Owner's actual or threatened violations of the restrictive covenants contained herein.

F. The obligations under this Section XII shall survive the termination of this Agreement, regardless of cause or the terminating Party.

XIII. **Termination**.

A. *Termination by Owner.* There shall be no fee charged for Owner's decision not to renew this Agreement but instead to end it as of Termination Date specified in Section I so long as Owner provides Manager with not less than thirty (30) days and no more than ninety (90) days prior written notice of its intent to terminate the Agreement as of the Termination Date. This Agreement may be terminated by Owner before the Termination Date by providing written notice to Manager not less than thirty (30) days prior to the Termination Date specified in such notice. Upon early termination, which shall be any date other than the Termination Date set forth in Section I above, Owner shall pay Manager, in addition to all fees that accrue through the Termination Date, a termination fee equal to the lesser of (i) the management fee that would accrue over the remainder of the stated term of this Agreement, or (ii) the management fee that would accrue over the next six (6) month period. The accrued management fee shall be calculated based on the monthly fee charged for the last full calendar month prior to service of the notice of cancellation. If Owner directs the Manager to transfer files and documents to a successor management company, Owner will pay Manager a transfer fee of $500.00. Any amounts owed by Owner to Manager shall be transferred from Owner's Trust Account prior to the termination of this Agreement. If funds in Owner's Trust Account are insufficient to pay such amounts, then within ten (10) days of the effective date of such termination, Owner will pay Manager all monies due.

B. *Termination by Manager.* There shall be no fee charged for Manager's decision not to renew this Agreement but instead to end it as of Termination Date specified in Section I. This Agreement may be terminated by Manager before the Termination Date by providing written notice to Owner not less than sixty (60) days prior to the termination date specified in such notice. If Owner, in connection with the Property, violates or fails, to correct any violation of federal, state or local law, including without limitation the curing of any building code violations, Manager may terminate this Agreement at any time upon written notice to Owner, which termination shall be effective ten (10) days after the service of such notice. Any applicable indemnity, liability or payment provision herein shall survive such termination. Owner shall pay to Manager all fees earned prior to the effective date of the termination.

XIV. **Assignability**. Owner agrees that at any time during the term of this Agreement, if all or substantially all of the stock or other ownership interests in Manager are sold or otherwise transferred to another licensed property manager, then Manager may, with the prior written consent of Owner (which consent shall not be unreasonably withheld, delayed or conditioned) assign Manager's rights and responsibilities hereunder to such other property management firm. In the event of such assignment, this Agreement shall continue in full force and effect; provided that any assignee is already engaged in the business of property management.

| | |
|---|---|
| XV. | **Security Agreement**. Owner hereby grants Manager a security interest in all funds which are held by or on behalf of Manager for Owner and in all personal property of Owner located on or in the Property. This security interest shall serve as collateral for Owner's obligations under this Agreement and for Owner's obligations under any other agreement pursuant to which Manager is performing property management services for Owner or an affiliate of Owner. Manager is authorized to record a financing statement and applicable amendments thereto against the Property and may enforce such security interest as provided under the Illinois Uniform Commercial Code. |
| XVI. | **Fair Housing**. Owner and Manager shall comply with all applicable provisions of the Fair Housing Law of Illinois and the United States Fair Housing Act. |
| XVII. | **Disputes**. Any dispute between the Parties that arises out of or relates to this Agreement or its breach, by initialing the space below, the Parties agree to try in good faith to settle the dispute by voluntary mediation before resorting to court action or arbitration. In the event of a dispute between the Parties concerning the operation and/or management of the Property or any of the terms of this Agreement, wherein a mediator is employed by either or both Parties, it is agreed that the fees of such mediator will be shared equally between the Parties. The mediation shall occur in Chicago, Illinois. |

          x _/s/_            x _/s/_
      (Owner Initials)     (Manager Initials)

| | |
|---|---|
| XVIII. | **Entire Agreement**. This Agreement incorporates all of the terms, covenants and conditions agreed to by the Parties and all prior and contemporaneous agreements are superseded hereby. This Agreement can only be modified or amended in writing, signed by both Parties. |
| XIX. | **Notices**. All notices, reports, statements, and any correspondence sent by one Party to another may, in the discretion of that Party, be given by mail, email, facsimile or other form of electronic communication to the most recent address set forth herein or another address specified in writing. Notwithstanding the previous sentence, any notice of default or termination under this Agreement shall be served personally or sent by certified mail. |

          x _/s/_            x _/s/_
      (Owner Initials)     (Manager Initials)

| | |
|---|---|
| XX. | **Governing Law; Venue.** This Agreement shall be governed by the laws of the State of Illinois (without giving effect to any choice of law doctrine while would result in the application of the laws of another jurisdiction), and Cook County, Illinois shall be the sole proper venue for any action arising hereunder or in connection herewith. The doctrine of *forum non conveniens* shall not be applied to move any action arising hereunder or in connection herewith to a venue other than Cook County, Illinois; the application of such doctrine being hereby waived by all persons claiming hereunder. |
| XXI. | **Waiver of Jury Trial**. Each party waives its respective rights to a trial by jury of any claim or cause of action based upon or arising out of or related to this agreement or the transactions contemplated hereby in any action, proceeding or other litigation of any type brought by any party against the other party or any affiliate of such other party, whether with respect to contract claims, tort claims or otherwise. The parties agree that any such claim or cause of action shall be tried by a court trial without a jury. Without limiting the foregoing, the parties further agree that their respective right to a trial by jury is waived by operation of this section as to any action, counterclaim or other proceeding which seeks, in whole or in part, to challenge the validity or enforceability of this agreement or any provision hereof. This waiver shall apply to any subsequent amendments, renewals, supplements or modifications to this agreement. Each party acknowledges that it has received the advice of competent counsel. |
| XXII. | **Entire Agreement.** Owner and Manager hereby agree that this Agreement constitutes the entire agreement between the parties hereto with respect to the matters herein contained, and all prior discussions and agreements |

|         |      |
|---------|------|
| | with respect thereto, except to the extent set forth herein, shall be of no further force and effect. |
| XXIII. | **Amendments.** This Agreement may be modified or amended only by written agreement signed by each of the parties hereto. |
| XXIV. | **Limited Liability of Manager and Owner.** Notwithstanding anything to the contrary contained herein, Manager's liability for any and all matters arising under or in connection with this Agreement and/or the Property (in the aggregate) shall not exceed an amount equal to: (i) the average monthly Management Fee payable under this Agreement, multiplied by (ii) six (6); provided such damages limitation shall not apply if such damages arise from the fraudulent acts of Manager, unlawful conversion of Owner funds, or willful damage to the Project. |
| XXV. | **No Third-Party Beneficiary.** The parties hereto agree that there are no intended third-party beneficiaries of this Agreement other than Owner's lender, if applicable, if there shall be an express collateral assignment of this Agreement to such lender, with written notice to Manager. |
| XXVI. | **Counterparts.** This Agreement may be executed in counterparts, each of which shall for all purposes be deemed an original and all such counterparts shall together constitute but one and the same agreement, binding upon all parties hereto, notwithstanding that all of such parties may not have executed the same counterpart. Facsimile or pdf signatures shall be binding on all parties. |
| XXVII. | **No Waiver.** The failure of either party to insist upon the strict performance of any covenant, agreement, provision or section of this Agreement shall not constitute a waiver thereof. |
| XXVIII. | **Severability.** If any provision of this Agreement or the application thereof to any party or circumstance shall be invalid or unenforceable to any extent, the remainder of this Agreement shall not be affected thereby. |
| XXIX. | **Prevailing Party.** In the event of litigation between the parties in connection with this Agreement, the reasonable attorneys' fees and court cost incurred by the party prevailing in such litigation shall be borne by the non-prevailing party. |
| XXX. | **Emergency Contact.** If in the event of an emergency, as determined by Manager, Manager is unable to contact Owner in a timely manner to prevent damage to the Property or claims against Owner, Manager may contact the following person who is authorized, in emergency circumstances only, to act in behalf of the Owner in authorizing Manager to take any necessary and appropriate remedial action: |

| Kevin Nugent | 773-908-9762 |
|---|---|
| **(Print Name)** | **(Telephone)** |
| 765 E 69th Pl | Chicago, IL 60637 |
| **(Mailing Address)** | **(City, State, Zip)** |

**PROPERTY OWNER:**

| Kevin Nugent | 9/7/2022 |
| **(Name)** | **(Date)** |
| 765 E 69th PL | Chicago, IL, 60637 |
| **(Mailing Address)** | **(City, State, Zip)** |
| kevinnugent@wpdmanagement.com | 773-908-9762 |
| **(E-mail Address)** | **(Telephone)** |
| | |
| | **(Telephone)** |

**PROPERTY MANAGEMENT COMPANY:**

**WPD Management, LLC**
PO Box 377950
Chicago, IL 60637
Office: (312) 254-8270
www.wpdmanagement.com
Designated Agent: Eric Green

    **IN WITNESS WHEREOF**, the parties hereto have affixed or caused to be affixed their respective signatures to this Agreement this _14th_ day of September, 2022.

**PROPERTY OWNER:**

_[signature]_
**Print Name:** _____
**Its: Owner**

**PROPERTY MANAGEMENT COMPANY:**

**WPD MANAGEMENT, LLC**

**By:** _[signature]_
**Its: Owners**